## Aras Estate

*Stanley Jakubowski*, for accountant.
*C. Francis Fisher*, for attorney in fact.
*Judith J. Jamison*, for Commonwealth.

BOLGER, J., April 13, 1959.—Decedent died February 15, 1956, intestate, unmarried and without issue.

Letters of administration were granted to the accountant March 21, 1956; proof of publication of the grant of same was submitted and is annexed.

He was survived by two sisters, Jelena Aras Zrinski and Bozica Aras Berovic, and a nephew, Franjo Aras, son of decedent's brother, Paul Aras, who died December 1, 1954. All of the heirs and distributees reside at Zader, Yugoslavia.

This estate was originally called for audit November 4, 1957. However, an audit memorandum dated December 27, 1957, and signed by Lefever, J., referred the account to me for audit because the distributees reside in a country which is considered a satellite to the Union of Soviet Socialist Republics.

Payment of transfer inheritance tax in the sum of $700.36 on September 30, 1957, was duly vouched.

The distributees of two of the shares, viz., Franjo Aras and Bozica Aras Berovic, assigned their inter-

ests by power of attorney dated December 3, 1956, to the Consul General of the Federal Peoples Republic of Yugoslavia in New York, N. Y. The Consul General of Yugoslavia appeared as attorney in fact and claimed the funds. The other distributee, Jelena Aras Zrinski, has made an assignment of her interest to her daughter, Mrs. Katerina Garshanin, who is presently residing in the United States and who was present in court at the audit.

The facts of this case when read in conjunction with those in Zupko Estate, 15 D. & C. 2d 442, reveal the fluid fluctuations and variations of political, social and economic policies and practices prevailing in Russia, in its satellite countries, in other Communist and, no doubt, in Socialist countries, and indicate that every case in this category is sui generis. This fluidity is a part of the Communist dialectical tactic with a changing potential from day to day and, therefore, requires constant observation and attention, and possible review. The Act of July 28, 1953, P. L. 674, as stated in Zupko Estate, supra, is not a confiscatory act, but merely a custodial one, the custody being essentially of a temporary character. Therefore, any beneficiary whose funds or property are awarded to the Commonwealth in accordance with its terms, may, at any time, reapply to the court which ordered the funds paid into the State Treasury for relief.

Based upon a thorough and painstaking investigation by the Deputy Attorney General in charge of this case, particularly among several departments of the United States Government which sustain the testimony of the Yugoslav Consul, Save Temer, of Pittsburgh, the Commonwealth offers no opposition to the request of counsel for the Yugoslav Government that the power of attorney executed by the two beneficiaries resident in that country, in regular form before an American Consul in that country, be accepted in evidence and that

the awards be made in accordance therewith to the Yugoslav Consul, for transmittal by him to the named beneficiaries.

Careful examination of the documentary evidence from Washington reveals the following: United States Treasury Regulations which forbid the transmittal of funds to Russia and other satellite countries do not include Yugoslavia; while remittances in dollars may be made to such citizens, they cannot use them in that form, but must exchange them for dinars; there is no ceiling on the amount of them and according to the Director of the European Division O. E. A. Bureau of Foreign Commerce of the Department of Commerce, remittances from inheritances receive the favorable rate of exchange of 600 to the dollar as compared with the usual rate of 300 and the tourist rate of 400, without tax when the inheritance tax is paid at the source; that consumer goods, including food, clothing and shelter, are available in Yugoslavia at favorable prices; that gift parcels not exceeding $66.66 per package are not subject to import duties, only a nominal fee of $.67 being levied. The uncontradicted testimony of Save Temer, the Yugoslav Consul, that should these beneficiaries receive these funds they will be at liberty to live off of them, they can retire in a resort place and live there as long as the money lasts. They can even build a house for themselves, rent it, alienate it and at death devise it. Much of this information is confirmed by the United States Department of State. Ownership of private property, real and personal, is legal, realty holdings being limited to 40 acres. The law there recognizes inheritances except as to the 40-acre limit on real estate, and inherited bank accounts are exempt from inheritance taxes. They have no such crime as parasitism nor is it a crime against the State to possess personal property in any amount. The economy per-

638

mits of small private factories employing not more than three persons. In accordance with a bulletin issued by the United States Department of Health Education and Welfare, Yugoslavia is one of the several countries which have old age, survivors and disability insurance.

Respecting the rule of law, there appears to be a narrow area in which courts function. While they do not have power to decide constitutional or other broad public questions since they are pretty much an arm of the political regime, nevertheless they can and do protect personal property rights. There appears to be at present no law authorizing confiscation of property nor subjecting any person who lives on unearned income to reprisal of any kind or character.

Yugoslavia is a Communist country and as such its philosophies are alien to our own. It is not within the Soviet orbit, being the only existing example of National Communism. However, dialectics are involved there as elsewhere in the Communist world; the fluctuations and variations in goals and in policies characteristic of the Communist philosophy and tactics prevail. Much can happen if the top power cracks down on the people, but such action has not occurred and there is no indication of its readiness to do so. It is clear that property rights there are in a distinctly different area of the economy than in Russia as we stated them in Zupko Estate, supra. The right to acquire and enjoy the benefit of money and property by inheritance from abroad is at least presently favored by the Government which has indirectly benefited greatly by this policy (New York Times, February 8, 1959, by A. M. Rosenthal), and one which is, therefore, likely to continue. Such gifts whether of money or of goods are not as in Russia used as fundamentally as a national revenue resource in that the Government receives the maximum benefit from such gifts to Russian citizens, while the

latter benefits only minimally. The record here consists of trustworthy and credible evidence which all points to the conclusion that funds and goods sent to Yugoslavia not only reach the beneficiaries in substantial amount and quantity, but such recipients are at liberty to use and enjoy such gifts without fear of confiscation or of reprisal.

Therefore, the auditing judge is completely satisfied that the two beneficiaries of this estate have established to his satisfaction that: (1) They are the next of kin of the decedent; (2) their power of attorney to the Yugoslav Consul is accepted and his appearance recognized; (3) their request for an award to him on behalf of their share of this estate, joined in by the Deputy Attorney General, is granted because it is found as a fact that if such award were made to him, that claimants will receive the use, benefit, enjoyment and control of it in accordance with the Act of July 28, 1953.

In closing the discussion, the auditing judge expresses to the Deputy Attorney General personally and on behalf of her high office, his deep sense of gratitude for the intelligent, energetic and objective preparation and presentation of its case and her aid in the establishment of a reliable factual record. Without such coöperation we would be greatly handicapped in reaching a just conclusion.

On his appearance slip counsel for the accountant requests additional credits totaling $80.86 for administration expenses. There was no objection to this request. It is allowed and they are directed to be paid.

There was no objection to the account which shows a balance of principal of personal estate of $3,839.16 which, composed as indicated, less credits on counsel's appearance slip, $80.86, together with income, if any, received since the filing of the account, is awarded one-third to Katerina Garshanin, assignee of Jelena Aras

Zrinski, one-third to Ivan E. Mirosevic, Consul General of the Federal Peoples Republic of Yugoslavia at Pittsburgh, for transmittal to Franjo Aras in Yugoslavia, and the remaining one-third to Ivan E. Mirosevic, Consul General of the Federal Peoples Republic of Yugoslavia at Pittsburgh, to be transmitted to Bozica Aras Berovic.

Leave is hereby given to the accountant to make all necessary transfers and assignments.

And now, April 13, 1959, the account is confirmed nisi.